UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MARCEL CYR, | : |
| Plaintiff, | : |
| v. | : File No. 1:12-cv-00105-jgm |
| ADDISON RUTLAND SUPERVISORY UNION, | : |
| Defendant. | : |

**MEMORANDUM AND ORDER**
(Doc. 25.)

I.  Introduction

The defendant in this civil rights action, the Addison Rutland Supervisory Union ("ARSU"), has filed a partial motion to dismiss. (Doc. 25.) The ARSU seeks to dismiss the claims of the plaintiff, Marcel Cyr, on the grounds that: (1) he possesses no First Amendment rights with respect to school property; (2) he possesses no liberty or property interest in accessing school property under the Fourteenth Amendment; and (3) the remainder of his Fourteenth Amendment claim duplicates his First Amendment claim. Id. at 1-2. Mr. Cyr has opposed this relief. (Doc. 30.) The ARSU has filed a reply. (Doc. 31.) As set forth below, the ARSU's motion to dismiss is granted in part and denied in part.

II.  Factual Background

At this procedural stage, the Court takes the allegations in the Amended Complaint as true and outlines the relevant facts accordingly.

Mr. Cyr and his spouse ("the Cyrs") have a son and a daughter, who have both attended the Benson Village School ("BVS"). (Doc. 22 at ¶¶ 9, 11.) The Cyrs' children have suffered assaults

and harassment on BVS property.  Id. at ¶¶ 9-11.  Their son also has a significant learning disability.  Id. at ¶ 9.  The Cyrs have complained to school officials, as well as the Vermont State Police, about these challenges.  Id. at ¶¶ 10-11.  They have also criticized the special education and student harassment policies and practices at the BVS and advocated for changes to them.  Id. at ¶ 12.  The BVS is part of the Addison Rutland Supervisory Union ("ARSU").  Id. at ¶ 5.

In addition to complaining to school officials, the Cyrs have offered their views to elected officials at school board meetings.  Id. at ¶¶ 10, 13.  These meetings also allow them to stay informed about school business.  Id. at ¶ 13.  As part of these advocacy efforts, Mr. Cyr has spoken during the public comment portion of school board meetings; distributed printed material critical of school policies and educational test results; emailed his views to friends and acquaintances; displayed yard signs advocating for the defeat of the school budget; and posted public comments critical of the school principal during a school strike.  Id. at ¶ 15.

The BVS issued a notice against trespass[1] barring Mr. Cyr from school property in September 2011.  Id. at ¶ 19.  The notice contained no information about why the BVS had banned him.  Id. at ¶ 20.  Nor did it provide any information about how Mr. Cyr could contest the ban.  Id. at ¶ 21.  Following an investigation by Vermont Legal Aid, Mr. Cyr learned the BVS had issued the notice because he had honked his car horn in the school parking lot.  Id. at ¶ 18.  He did so in an attempt to attract the attention of one of his children's favorite staff members.  Id. at ¶ 22.  The BVS rescinded the notice about two weeks after its issuance.  Id. at ¶ 23.

---

[1] While the ARSU refers to the notices as "notices against trespass" in its pleadings (Doc. 25 at 1), the Amended Complaint describes them as "no trespass orders."  (Doc. 22 at ¶ 19.)  A notice attached to the Amended Complaint resolves this conflict, as it is entitled "notice against trespass."  (Doc. 22-1 at 1.)

The ARSU served Mr. Cyr with a second notice against trespass in March 2012.  Id. at ¶ 24.  The notice bars Mr. Cyr from any school property in the entire supervisory union for two years.  Id. at ¶ 25.  The ARSU served the notice during a series of meetings to evaluate an educational plan for Mr. Cyr's son.  Id. at ¶ 24.  According to the BVS, Mr. Cyr had not sufficiently complied with its demands during these meetings.  Id.  Just as with the September 2011 notice, the March 2012 notice provides no information about either the basis for the ban or opportunities to contest it.  Id. at ¶ 27; Doc. 22-1 at 1.  The ARSU issued the trespass notice pursuant to 13 V.S.A. § 3705(a), which makes it a crime to enter property in violation of a notice against trespass.  Doc. 22 at ¶ 26.

When Mr. Cyr contacted the ARSU about the March 2012 notice, the ARSU informed him it had received a tip he posed a danger to the schools.  Id. at ¶ 28.  The ARSU refused to disclose the basis for the tip.  Id. at ¶ 29.  Mr. Cyr made multiple attempts to contest the notice against trespass.  Id. at ¶ 30.  The ARSU refused to provide him with an opportunity to contest the notice unless he agreed to undergo a psychiatric evaluation, with the results furnished to the ARSU.  Id. at ¶ 31.

In search of more information about the ban, Mr. Cyr submitted a public records request to the ARSU.  Id. at ¶ 33.  Instead of complying with this request, the ARSU sued Mr. Cyr in Vermont Superior Court, seeking a declaration that it need not disclose the information.  Id. at ¶ 35.  As a counterclaim, Mr. Cyr asserted a violation of the public records act in Vermont.  Id.  He ultimately prevailed on his counterclaim and obtained the records.  Id. at ¶ 36.  Mr. Cyr learned the ARSU based its trespass ban on a letter written by a psychologist.  Id.  She had never met Mr. Cyr, wrote the letter at the ARSU's request, and relied on discussions with school employees.  Id.

Mr. Cyr asserts First and Fourteenth Amendment violations in the Amended Complaint. His first count claims the trespass ban "impermissibly burdened his ability to express himself, obtain information, and participate in the political process" in violation of the First Amendment.  Id. at ¶ 38.  His second count alleges a violation of the Fourteenth Amendment's guarantee of procedural due process.  Id. at ¶ 39.  It claims the ARSU issued trespass notices "in a way that creates a high risk of the erroneous deprivation of rights" and that one of these notices deprived him of "his rights without notice or a meaningful opportunity to be heard."  Id.  Mr. Cyr seeks a declaration that the ARSU has violated his constitutional rights and damages for these violations.  Id. at ¶ 40.  He also seeks to enjoin the ARSU from enforcing the March 2012 notice against trespass and from issuing future notices without sufficient process.  Id.

III.   Discussion

    1.   Standard of Review

A motion to dismiss tests the legal rather than the factual sufficiency of a complaint.  See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  A court should grant a motion to dismiss only if the pleader fails to show a "plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).  A court accepts the facts alleged in the pleading as true, draws all reasonable inferences in favor of the pleader, and dismisses only "if the facts as alleged are insufficient to raise a right to relief above the speculative level."  Price v. N.Y. State Bd. of Elections, 540 F.3d 101, 107 (2d Cir. 2008) ( internal quotations omitted).  A complaint must state a plausible–not just possible–claim for relief to survive a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Determining whether a complaint survives a motion to dismiss requires the court to make a "context-specific" analysis and "draw on its judicial experience and common sense."  Id. at 679.

2. Access to School Property Generally

   A. First Amendment Right to Access

The ARSU has moved to dismiss the Amended Complaint "[t]o the extent [it] suggests that the notice against trespass violates Mr. Cyr's First and Fourteenth Amendment rights relative to school property generally and asks the Court to declare the notice against trespass a nullity and enjoin enforcement of the notice in its entirety." (Doc. 25 at 1.) The ARSU does not dispute that Mr. Cyr has a First Amendment right to attend public meetings on school property, including the school board meetings at issue here. Id. at 5, 12. Nor does it dispute that he might possess a liberty or property interest under the Fourteenth Amendment in attending such meetings. See id. at 1-2, 10-11. The ARSU seeks instead to establish that Mr. Cyr is not entitled to "unfettered access" to school property, thereby narrowing his lawsuit to claims concerning his attendance at public meetings only. Id. at 3.

Mr. Cyr responds that the ARSU has infringed his First Amendment rights to free expression and to receive information. (Doc. 30 at 4-5.) He asserts the notice against trespass created a "First-Amendment-Free Zone," applicable only to him, as it forbids his attendance at public meetings and expression on school grounds, including parking lots. Id. at 4-5, 11-12. Mr. Cyr contends the trespass notice violated his First Amendment rights and, further, that these rights constitute liberty interests for procedural due process purposes. Id. at 4-5, 12-13. Significantly, Mr. Cyr has not asserted a general right to access school property in his opposition. His claims rest on allegations the ARSU restricted his First Amendment rights through the notice against trespass. Mr. Cyr states in his opposition that he makes no claim the ARSU should provide him access to his children's classrooms. Id. at 11.

"The Constitution does not guarantee unlimited freedom to speak on government property." Bronx Household of Faith v. Bd. of Educ. of N.Y., 492 F.3d 89, 97 (2d Cir. 2007). The level of scrutiny applied to speech restrictions on government property depends on the nature of the forum in which it occurs. Id. The Supreme Court has established four categories of fora for expression "that, correspondingly, fall along a spectrum of constitutional protection." Id. (internal quotations omitted).

Traditional public fora lie at one end of this spectrum. Id. The government cannot exclude speakers from "traditional public fora–streets, parks, and places that 'by long tradition . . . have been devoted to assembly and debate'"–unless the exclusion is narrowly tailored to serve a compelling state interest. Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983)). This same level of scrutiny applies to a "designated public forum," which the government intentionally designates as "a place or means of communication as a public forum." Id. (internal quotations omitted). The government creates a limited public forum by designating "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Id. (internal quotations omitted). Reasonable, viewpoint-neutral rules may govern the content of speech in a limited public forum. Id. Lastly, at the other end of the spectrum, lie nonpublic fora. Id. The government may exclude speech in a nonpublic forum–one that neither tradition nor designation opens to the public for communication–through "reasonable content-based restrictions so long as these do not suppress expression merely because public officials oppose the speaker's view." Id. (internal quotations omitted).

Instead of applying this framework to the public school property at issue here, the ARSU contends members of the public lack any constitutionally protected interest or right in accessing

school property generally. (Doc. 25 at 1.) The ARSU cites to numerous decisions in support of this blanket rule. Id. at 5-9; Doc. 31 at 2-3. It is clear a public school has a compelling interest in maintaining order and ensuring safety on its grounds. Lovern v. Edwards, 190 F.3d 648, 655-56 (4th Cir. 1999). These interests, in turn, may justify constitutional infringements, including restrictions on the First Amendment rights of parents and other members of the public. Id. (father's history of aggressive conduct towards school employees justified trespass ban); Cunningham v. Lenape Reg'l High Dist. Bd. of Educ., 492 F. Supp. 2d 439, 450-51 (D.N.J. 2007) (father "cannot hide behind the protections of the First Amendment to harass and bully the faculty and staff"). Indeed, "school officials have broad discretion in restricting visitors on school property to protect the safety and welfare of the school children." Embry v. Lewis, 215 F.3d 884, 889 (8th Cir. 2000). But there is no categorical rule that the interests of a school in safety and order always outweigh constitutional rights. See id. Members of the public retain First Amendment rights with respect to school property, but only to a limited extent. See Travis v. Owego-Apalachin Sch. Dist., 927 F.3d 688, 691-93 (2d Cir. 1991). As discussed below, however, they do not possess a liberty or property interest in accessing school property for procedural due process purposes.

The Court declines the ARSU's invitation to carve out public school property from the public forum framework. As this case proceeds forward, the need for safety and order on school grounds will by no means be irrelevant. In fact, the ARSU justifies the notice against trespass on the grounds that it received "an unsolicited warning from an independent psychologist that, in her professional opinion, Mr. Cyr's conduct . . . presented a high risk of danger."[2] (Doc. 31 at 1 n.1.) Mr. Cyr's conduct may ultimately provide a sufficient justification for issuing the trespass notice

---

[2] Mr. Cyr disputes the veracity of this warning. He alleges the ARSU requested the "tip letter" from the psychologist, who drafted it in consultation with the ARSU's lawyer. (Doc. 22 at ¶¶ 36-37.)

under the public forum framework.[3] See Bronx Household of Faith, 492 F.3d at 97. To the extent Mr. Cyr alleges interference with his speech rights on school property, including school parking lots, the motion to dismiss is denied. See Grattan v. Bd. of Sch. Comm'rs of Baltimore City, 805 F.2d 1160, 1162-63 (4th Cir. 1986) (applying framework to union solicitation activities in public school parking lot). The motion to dismiss is granted, as to access to school classrooms, in light of Mr. Cyr's statement that he makes no claim about access to them. (Doc. 30 at 11.)

    B.  Liberty Interest in Access

The ARSU has moved to dismiss Mr. Cyr's procedural due process claim to the extent it relies on a liberty or property interest in accessing school property generally. A procedural due process claim requires proof of two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. N.Y. State Educ. Dept., 692 F.3d 202, 218 (2d Cir. 2012). These elements derive from the Due Process Clause of the Fourteenth Amendment, which prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Mr. Cyr does not contend the ARSU deprived him of a property interest. (Doc. 30 at 13.) Rather, he contends the ARSU deprived him of a liberty interest–his First Amendment rights of free expression and to receive information.[4] Id. The ARSU has not challenged whether procedural due

---

[3] The level of justification necessary for the notice against trespass may differ between the school board meetings and school grounds, which likely fall into different fora categories on the spectrum. Compare Jones v. Bay Shore Union Free Sch. Dist., No. 12-cv-4051, 2013 WL 2316643, at *6 (E.D.N.Y. May 28, 2013) (a school board meeting is typically a limited public forum) with Pearlman v. Cooperstown Cent. Sch. Dist., No. 3:01-cv-504, 2003 WL 23723827, at *5 (N.D.N.Y. June 11, 2003) (a school is a non-public forum during school hours).

[4] The Amended Complaint alleges, in general terms, that the ARSU deprived Mr. Cyr of "his rights." (Doc. 22 at ¶ 39.) Mr. Cyr clarified in his opposition that he alleges a liberty interest in his First Amendment rights. (Doc. 30 at 13.)

process protects such a broad liberty interest. (Doc. 31 at 2-3.) Nor has it challenged whether speech at a school board meeting also enjoys procedural protections. Id. The ARSU instead challenges whether Mr. Cyr has stated a liberty interest in accessing school property generally. (Doc. 25 at 7.) The ARSU is correct that Mr. Cyr lacks such an interest.

The range of liberty interests protected by procedural due process is not infinite. Bd. of Regents v. Roth, 408 U.S. 564, 570 (1972). A liberty interest may arise from two sources: "(1) the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or . . . (2) an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (numerals added). Mr. Cyr has not identified a Vermont state law or policy that provides him with a liberty interest in accessing school property. As the ARSU points out, many courts have ruled parents and other third-parties lack a constitutionally protected interest in such access. See Hannemann v. S. Door Cnty. Sch. Dist., 673 F.3d 746, 755-56 (7th Cir. 2012); Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ., 42 F.3d 719, 724 (2d Cir. 1994) (school board member lacked "unrestricted right to enter the school classrooms or hallways during school hours"); Ritchie v. Coldwater Cmty. Sch., No. 1:11-cv-530, 2012 WL 2862037, at *16 (W.D. Mich. July 11, 2012); Justice v. Farley, No. 5:11-cv-99, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012); Martin v. Clark, 3:10-cv-1500, 2010 WL 4256030, at *2 (N.D. Ohio Oct. 21, 2010); Cwik v. Dillon, No. 1:09-cv-669, 2010 WL 5691404, at *6 (S.D. Ohio Sept. 20, 2010); Pearlman, 2003 WL at *3. The Court finds these decisions persuasive. Indeed, while they possess a constitutional right to direct the education of their children, parents do not possess a liberty interest in unfettered access to school property. Justice, 2012 WL at *3.

To the extent Mr. Cyr asserts a liberty interest in accessing school property generally, his procedural due process claim is dismissed. This ruling narrows his procedural due process claim. It

is not dismissed in its entirety. Mr. Cyr may continue to assert the ARSU, by issuing the notice against trespass, deprived him of First Amendment rights without sufficient process. However, he cannot assert he possesses a liberty interest–independent of the First Amendment–in accessing school property.

      3.      Adequacy of Process

The ARSU contends the notice against trespass provided Mr. Cyr with adequate process for due process purposes. (Doc. 25 at 9-10.) The Amended Complaint alleges the ARSU received a tip from a psychologist that Mr. Cyr posed a danger to the schools; the ARSU issued a trespass notice in response; and any opportunity to contest the notice required Mr. Cyr to first undergo a psychiatric evaluation, with the results provided to the ARSU. Relying on its communications regarding the psychiatric evaluation, the ARSU contends Mr. Cyr "cannot claim that he did not have notice of why [the notice of trespass] was issued or an opportunity to challenge [it]." (Doc. 25 at 10.) This argument is not especially developed. It also appears only to address the March 2012 trespass notice and not the September 2011 notice. See id.

To determine whether the ARSU afforded Mr. Cyr adequate process, "it is necessary to ask what process the [ARSU] provided, and whether it was constitutionally adequate." Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006). As part of this analysis, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Id. (internal quotations omitted). A meaningful post-deprivation remedy automatically satisfies deprivations caused by random, unauthorized acts. Id. at 465-66. This rule recognizes that state and local governments cannot predict when such deprivations will occur. Id. at 465. For deprivations based on established state

procedures, a court must balance the three factors identified in Mathews v. Eldridge, 424 U.S. 319 (1976), to determine the process due.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.  To be sure, application of the Mathews test may only require a meaningful, post-deprivation remedy.  See Nnebe v. Daus, 644 F.3d 147, 158-59 (2d Cir. 2011) (no pre-deprivation hearing necessary to suspend taxi driver following arrest).  A post-deprivation remedy is just not adequate ipso facto.  See Rivera-Powell, 470 F.3d at 465.

   Mr. Cyr applies the Mathews test in his opposition, and the ARSU has not objected to its application in its reply.  At least for now, the Court will assume its applicability.  Taking the facts in the Amended Complaint as true, the Mathews test weighs in favor of Mr. Cyr.  The Court is mindful that his interest in exercising his First Amendment rights on school grounds is not particularly strong.  He is still free to express his opinions, just in different forums.  See Int'l Caucus of Labor Comm. v. Maryland Dep't of Transp., Motor Vehicle Admin., 745 F. Supp. 323, 329-30 (D. Md. 1990).  He has a stronger interest in attending school boarding meetings.  For both interests, however, the process afforded him is minimal, at best.  The March 2012 trespass notice did not inform Mr. Cyr of any procedure for contesting its issuance.  Rather, in response to inquiries from Mr. Cyr, the ARSU informed him that he could not contest the notice unless he underwent a psychiatric evaluation.  Cf. Catron v. City of St. Petersburg, 658 F.3d 1260, 1268-69 (11th Cir. 2011) (trespass ordinance that lacked an appeal process is procedurally inadequate).  Process contingent on such an intrusion creates a substantial risk Mr. Cyr will decline to contest the notice.  That the notice

did not notify Mr. Cyr of any procedure for contesting it further compounds this risk. A significant governmental interest must therefore justify the trespass ban. But the only governmental interest identified in the Amended Complaint is a tip from a psychologist who had never met Mr. Cyr. The basis for the psychologist's belief that Mr. Cyr "posed a danger to the schools" is unsubstantiated.[5] (Doc. 22 at ¶ 28.) Weighing the three Mathews factors–"the private interest, the risk of erroneous deprivation, and the government's interest"–the Court is unable to conclude the ARSU provided Mr. Cyr with adequate process. Nnebe, 644 F.3d at 158.

The ARSU also asserts it complied with 13 V.S.A. § 3705, which does not require property owners to list the reason for the issuance of the notice or to provide for an appeal process. Absent a separate right under the statute, the ARSU contends Mr. Cyr is not entitled to additional notice or process. This argument is unavailing. Because the amount of process due is a constitutional determination, state law does not define its parameters. See Mathews, 424 U.S. at 334-35.

In addition, the ARSU contends property owners need not provide a hearing because a notice against trespass does not invite a factual dispute. Relying on Pietrangelo, II v. Alvas Corp., 5:09-cv-68, 2010 WL 3323701 (D. Vt. May 19, 2010), aff'd sub nom., 487 F. App'x 629 (2d Cir. 2012), the ARSU asserts "[p]roperty owners may bar others from their properties without stating a reason or even having one, and a notice against trespass is simply one form of informing an individual that he or she is not welcome." Doc. 25 at 9 (quoting Pietrangelo, II, 2010 WL at *4). The trespass notice in Pietrangelo, II barred the plaintiff from entering a privately-owned delicatessen. The notice contrasts with the one here, which barred Mr. Cyr from accessing public

---

[5] In its motion to dismiss, the ARSU explains the psychologist raised concerns about potential violence against its employees. See Doc. 25 at 2; Collins v. Univ. of N.H., 664 F.3d 8, 18 (1st Cir. 2011) (university's strong interest in "order and safety" justified trespass ban without pre-deprivation hearing). At this early stage, however, the Court only evaluates the allegations in the Amended Complaint.

12

property.  The Constitution requires a different analysis with respect to public property.  See Catron, 658 F.3d at 1268-69.

    4.        Graham Rule

The ARSU has moved to dismiss Mr. Cyr's Fourteenth Amendment claim as duplicative of his claims under the First Amendment.  (Doc. 25 at 10.)  Although recognizing he states a First Amendment claim based on his exclusion from the school board meetings, the ARSU contends Mr. Cyr cannot premise his First and Fourteenth Amendment claims on the same conduct.  Id. at 11-12.  Mr. Cyr responds that the ARSU has confused procedural due process with substantive due process.  (Doc. 30 at 13-14.)  He acknowledges that a civil rights claimant cannot sustain a substantive due process claim where another constitutional provision affords explicit protection.  Id. at 13-14.  For procedural due process claims, however, Mr. Cyr contends this rule is inapplicable.  Id.  The courts have referred to this rule as the "Graham rule."

Mr. Cyr may allege free speech and procedural due process claims.  He is correct that the Graham rule only applies to substantive due process claims.  Although substantive and procedural due process both derive from the Due Process Clause of the Fourteenth Amendment, these concepts protect different, yet related, constitutional guarantees.  Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal quotations omitted).  It is also the basis for protecting fundamental rights or liberty interests not explicitly enumerated in the Constitution.  Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997).  A procedural due process claim, in contrast, challenges the fairness of the procedure by which government action denies a constitutionally protected interest in life, liberty, or property.  Zinermon, 494 U.S. at 125.  "[T]he

13

deprivation by state action . . . is not in itself unconstitutional [for procedural due process purposes]; what is unconstitutional is the deprivation of such an interest <u>without due process of law</u>." <u>Id.</u>

The Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 125 (1992). "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998) (internal quotations omitted). This principle is known as the <u>Graham</u> rule because the Supreme Court first recognized it in <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989). <u>Graham</u> held that the Fourth Amendment's reasonableness standard applies to all excessive force claims stemming from seizures by law enforcement officers, as opposed to the "shocks the conscience" standard that applies to violations of substantive due process. <u>Id.</u> The <u>Graham</u> rule "simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." <u>Lewis</u>, 523 U.S. at 843 (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997)).

The Supreme Court has not extended the <u>Graham</u> rule to procedural due process claims. Nor would it be appropriate to do so. Procedural due process guarantees a fair procedure. <u>Zinermon</u>, 494 U.S. at 125. A procedural due process claim seeks to redress the process by which a liberty or property interest is denied, not the actual denial of that right. <u>Id.</u> When the same conduct states a substantive due process claim and a violation of another substantive right, the <u>Graham</u> rule permits civil rights claimants to assert violations of that substantive right only. If extended to

14

procedural due process claims, the Graham rule would prevent claimants from asserting a separate, procedural right. Such an extension would place a significant limitation on procedural due process rights.

The Court is also mindful that the Graham rule stems from a reluctance to expand substantive due process. Lewis, 523 U.S. at 842. This need for judicial restraint is less pronounced in the procedural due process context, which is not itself a source of additional substantive rights. See Zinermon, 494 U.S. at 125-26. A procedural due process claim evaluates whether a claimant had an "opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333. Procedural due process claims do not invite open-ended decisionmaking to the same extent as substantive due process claims. See Collins, 503 U.S. at 125. The concerns motivating the Graham rule do not apply with the same force to procedural due process claims.

The ARSU supports its position that Mr. Cyr's procedural due process claim is duplicative of his First Amendment claim with two unreported district court decisions. See Ritchie, 2012 WL at *17; Decker v. Borough of Hughestown, No. 3:09-cv-1463, 2009 WL 4406142, at*4-5 (M.D. Penn. Nov. 25, 2009). These decisions summarily extend the Graham rule to procedural due process claims. Neither decision is binding on this Court. For the reasons above, the Court declines to follow them.

The ARSU has also relied on Piscottano v. Town of Somers, 396 F. Supp. 2d 187 (D. Conn. 2005), asserting it applied a similar analysis as the unreported decisions. (Doc. 31 at 3-4.) This reliance is misplaced. The plaintiff in Piscottano alleged town officials had prohibited her from speaking at a select board meeting. Piscottano, 396 F. Supp. 2d at 199. Although it permitted her free speech claim to proceed, the court ruled she had not established that the board had deprived her of a constitutionally protected liberty interest and dismissed her procedural due process claim

accordingly.  Id. at 205, 207.  It is unclear from the decision whether the plaintiff alleged her free speech rights constituted such an interest.  Id. at 207.  It is clear, however, that the court did not dismiss her procedural due process claim as duplicative of her free speech claim.  Id.

To the extent the ARSU seeks to dismiss Mr. Cyr's procedural due process claim as duplicative of his First Amendment claim, its motion to dismiss is denied.

IV.     Conclusion

The ARSU's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Mr. Cyr's procedural due process claim is dismissed to the extent it relied on a property or liberty interest in accessing school property, including school classrooms.  Except with respect to this interest, however, Mr. Cyr may continue to assert his Fourteenth Amendment claim.  His First Amendment claim survives in its entirety.

The parties shall file a proposed Stipulated Discovery Schedule/Order on or before July 16, 2013.  See D. Vt. L.R. 26(a).

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 2nd day of July, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge